IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

vs.

BRIAN S. KITTEL

        Defendant.

Case No. 6:19-cr-00240-MK
**OPINION AND ORDER**

AIKEN, District Judge:

After a bench trial, United States Magistrate Judge Mustafa T. Kasubhai convicted defendant Brian Kittel ("Kittel") of one count of improper parking in a federal parking lot in violation of 41 CFR § 102-74.430(f) and one count of failure to comply with the directions of a federal officer under 41 CFR § 102-74.385 and sentenced him to a $190 fine. Kittel now appeals his convictions. This Court has jurisdiction pursuant to 18 U.S.C. § 3402 and, for the reasons below, AFFIRMS.

## STATEMENT OF THE FACTS

On December 4, 2018, Kittel drove to his job at the Veteran Affairs office at the Eugene federal building and parked in a visitor's parking spot. He entered the building and asked Protective Service Officer ("PSO") Honeyman about parking but left without moving his car. After returning from lunch, Kittel again parked in a visitor's parking spot. PSO Honeyman issued Kittel a courtesy violation warning for the improper parking and delivered it to him in his office. PSO Honeyman asked Kittel to move his car and Kittel said he would move his car after work. Per Federal Protective Service ("FPS") directives, PSO Honeyman contacted FPS Inspector Turner. Inspector Turner went to Kittel's office and told Kittel's assistant that he needed to speak with Kittel. Kittel's assitant then entered Kittel's office and spoke with him. Inspector Turner waited for Kittel to come out, but when he did not, Inspector Turner told Kittel's assistant that he was going to tow the vehicle and went out to Kittel's car.

Soon after Inspector Turner left, Kittel came out to the parking lot and Inspector Turner asked him for his driver's license, which Kittel refused to provide. Inspector Turner informed Kittel that because he was on federal property, he was required to comply with Inspector Turner's request for his ID, which Kittel then provided along with his license number. Inspector Turner asked Kittel about the parking situation, but Kittel refused to answer any questions, stating that he was exercising his right not to speak. PSO Hawkins saw the start of the interaction from inside the federal building and went outside to help Inspector Turner. Inspector

Turner told Kittel that he was issuing him a parking citation and told him that he was being detained while Inspector Turner wrote it. Inspector Turner then contacted Eugene Police Department ("EPD") officers who came and stood by Kittel's car while Inspector Turner ran Kittel's information and issued a parking citation using an EPD computer.

Kittel repeatedly asked EPD officers and PSO Hawkins if he was being detained, to which the officers responded that Inspector Turner was detaining him, that he was not permitted to leave, and that doing so would be a crime. While Inspector Turner was still working on the citation, Kittel drove his car out of the parking spot and into a lot across the street before walking back towards the federal building. In the parking lot, Inspector Turner finished issuing Kittel a citation for parking in violation of posted signs. The next day, December 5, 2018, Inspector Turner returned to Kittel's office to issue him a second citation for failure to comply with the lawful directive of a federal officer.

## PROCEDURAL HISTORY

The day before trial, Kittel filed a Motion pursuant to Federal Rule of Criminal Procedure 12, seeking dismissal of the charges based on (1) selective enforcement, (2) government destruction of evidence, and (3) invalid regulations due to violation of the non-delegation doctrine. On July 30, 2019, Judge Kasubhai heard oral arguments on the motion and denied the claims of selective enforcement and violation of the non-delegation doctrine, but withheld ruling on the destruction of evidence claim until after trial. Following trial, Judge Kasubhai denied Kittel's destruction of evidence

claim and convicted Kittel on both counts. Kittel was sentenced to a combined criminal fine of $190. On August 7, 2019 Kittel filed a timely notice of appeal. Briefing was completed on November 16, 2020 and this Court held oral argument on February 18, 2021.

## LEGAL STANDARDS

Under Federal Rule of Criminal Procedure 58(g)(2)(B), a "defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." On an appeal from a Magistrate Judge's Order or Judgment, "[t]he defendant is not entitled to a trial *de novo* by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D); *see United States v. Stanton*, 501 F.3d 1093, 1099 (9th Cir. 2007). Thus, this Court reviews the magistrate judge's underlying factual findings for clear error and a magistrate judge's legal conclusions de novo. *United States v. McDermott*, 589 F. App'x 394, 395 (9th Cir. 2015) (citing *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986); Fed. R. Crim. P. 58(g)(2)(D)).

When challenged on insufficient evidence grounds, convictions are upheld when "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Stanton*, 501 F.3d at 1099. Questions surrounding lawful detentions are mixed questions of law and fact and, thus, reviewed de novo. *United States v. Thomas*, 863 F.2d 622, 625 (9th Cir. 1988). When evaluating the lawfulness

of a stop, the inquiry focuses on reviewing the totality of the circumstances surrounding the stop. *Id*.

## DISCUSSION

On appeal, Kittel challenges his convictions on five grounds:  (1) that the citations were the product of unconstitutional selective enforcement; (2) that the regulations under which he was charged were invalid; (3) that the parking signs were insufficient evidence to show that Kittel was prohibited from parking in the spot; (4) that his conviction was a violation of his Fifth Amendment due process right to fair notice; and (5) that the Government failed to meet its evidentiary burden to prove that Kittel failed to comply with a lawful directive.

## I.    *Selective Enforcement*

Kittel first argues that Inspector Turner's citations were the product of selective enforcement. The guarantee of equal protection prohibits selective enforcement based on an impermissible classification. *United States v. Steele*, 461 F.3d 1148, 1152 (9th Cir. 1975) ("The Due Process Clause of the Fifth Amendment furnishes a federal defendant with the same guarantee against discriminatory federal prosecution"). For "an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" *Bordenkircher v*. Hayes, 434 U.S. 357, 363 (1978).

To prove selective enforcement, Kittel must show (1) discriminatory effect, "that similarly situated individuals were not prosecuted," and (2) discriminatory motive, that the officers "decided to enforce the law against him on the basis of an

impermissible ground such as race, religion or exercise of constitutional rights." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920, 922 (9th Cir. 2012) (quoting *United States v. Armstrong*, 517 U.S. 456,466 (1996). The standard for proving discriminatory effect is "demanding," however a litigant asserting selective enforcement "need only allege some facts, either anecdotal or statistical, demonstrating that similarly situated defendant could have been prosecuted, but were not." *See id.* at 920.

As mentioned, Kittel raised this challenge in his pre-trial motion to dismiss. In his motion, Kittel argued discriminatory effect based on allegations that officers at the federal building had a policy of giving two warnings before issuing a citation, which Inspector Turner did not adhere to. Kittel argued discriminatory motive based on allegations that Inspector Turner decided to issue the citation because Kittel exercised his Fifth Amendment right to silence by refusing to speak with him in the parking lot. With the motion, Kittel offered Inspector Turner's statement of probable cause, in which he acknowledges a PSO protocol to give first time offenders a warning and that after two warnings a PSO must contact an FPS officer. In his statement, Inspector Turner also stated that he initially intended to give Kittel a warning, but later decided to issue a citation because of Kittel's behavior. Kittel also offered a copy of the FPS parking log, which noted when citations and warnings were issued. At the hearing, Kittel further introduced narrative statements from Inspector Turner and PSOs Honeyman and Hawkins about the parking incident on December 4th. Judge Kasubhai denied this aspect of the motion before trial.

Now, on appeal, Kittel argues that the evidence *offered at trial* shows selective enforcement. *See* Appellant's Br. at 16 (citing PSO Honeyman's testimony that a policy existed of giving two warnings before contacting an FPS officer); *id.* at 17 (citing Inspector Turner's testimony that the intent of a warning is to have the individual move their vehicle, and that Inspector Turner did not give Kittel adequate time to do so); *id.* at 18-19 (citing Inspector Turner's testimony that he did not routinely give citations and that he initially intended on only issuing Kittel a warning when he went to speak to Kittel in his office). These factual arguments may not be preserved for appeal because Kittel does not appear to have renewed his selective enforcement challenge after it Judge Kasubhai's pre-trial ruling.[1] But even considering the evidence from trial, Kittel has failed to show selective enforcement.

Kittel argues discriminatory effect alleging that Inspector Turner breached the GSA's policy of giving at least two warnings before writing a citation. Kittel relies on testimony from PSO Honeyman that there was an informal policy that parking violators receive two warnings before the PSOs contact an FPS agent to issue a citation. Records of these warnings are kept in the FPS log that Kittel presented at trial. The log shows that multiple employees from the VA received as many as three

---

[1] After the Government's case-in-chief, defense counsel made a Motion for Judgment of Acquittal, which Judge Kasubhai denied. Tr. 247-277. Defense counsel renewed the motion after the close of his evidence and, during a colloquy with Judge Kasubhai on the parking violation, began discussing the evidence regarding the alleged two-warning policy. Tr. 387-390. Defense counsel asserted "Mr. Kittel was clearly treated differently for whatever reason." Tr. 388:18-19. Judge Kasubhai then asked: "And so is that part of your argument in defense of the original charges or is it for the purposes of the motion to dismiss only that I've already denied? Because I'm not sure I need to consider the argument about disparate treatment at this point." Tr. 388:20-25. Defense counsel clarified that it was "a defense for a parking violation," specifically, that Turner was not following "their own policy" of giving two parking violation notices and that she was "not talking about the motion." Tr. 389:2-3, 7-18.

warnings for parking in visitor parking without being issued a citation. However, PSO Honeyman also testified that FPS directs PSOs to call FPS if there is a problem issuing a warning regardless of the number of previous warnings. Here, viewing the evidence in the light most favorable to the Government, PSO Honeyman issued a warning to Kittel, who crumpled up the warning and did not move his car, at which point PSO Honeyman followed FPS directives and contacted Inspector Turner about the incident. Kittel relies on the log to show disparate impact, however he erroneously compares his position to that of the individuals listed in the log. An individual similarly situated to Kittel is not merely a federal employee who received a warning for parking in a visitor's spot, as Kittel argues, but rather one who then failed to comply with the PSOs order to move their vehicle. Because Kittel does not provide evidence regarding the treatment of individuals who failed to obey a PSO order, he has failed to demonstrate that he was treated differently than similarly situated individuals.

Furthermore, even under the two-warning guideline, there is no evidence of disparate treatment. Inspector Kittel testified that after being contacted by PSO Honeyman, he went to Kittel's office to give him another warning, but Kittel did not come out to speak with him. Kittel thus deprived himself of the opportunity to receive a second warning. Kittel has therefore failed to show disparate treatment. Because Kittel has not sufficiently demonstrated discriminatory effect, the Court need not address the question of discriminatory motive.

## II.    *Invalid Regulation*

In 40 U.S.C. § 1315(c), Congress authorized the Department of Homeland Security to establish regulations with criminal penalties relating to the protection of federal property. Section 1315(c) provides:

> (1) IN GENERAL – The Secretary, in consultation with the Administrator of General Services, may prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property. The regulations may include reasonable penalties, within the limits prescribed in paragraph (2), for violations of the regulations. The regulations shall be posted and remain posted in a conspicuous place on the property.
>
> (2) PENALTIES – A person violating a regulation prescribed under this subsection shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both.

40 U.S.C. § 1315(c).

The regulations under which Kittel was charged, 41 C.F.R. §§ 102-74.430(f) and 102-74.385, were promulgated under this statutory authority. Section 102-74.450 provides the applicable penalties for violations of these regulations:

> A person found guilty of violating any rule or regulation in this subpart while on any property under the charge and control of GSA shall be fined under title 18 of the United States Code, imprisoned for not more than 30 days, or both.

41 CFR § 102-74.450.

In his motion to dismiss, Kittel argued that those regulations were not valid on two grounds. First, he contended that Congress improperly delegated the authority to DHS because § 1315(c) lacks specificity and fails to provide a meaningful constraint on DHS's exercise of discretion in promulgating rules under the statute.

Second, he contended that the penalties in § 102-74.450 are not "reasonable" and, therefore, exceed the scope of statutory authority delegated by Congress in § 1315(c). Kittel renews these arguments on appeal.

### a. *Improper Delegation*

Congress may not delegate its legislative power to another branch of government. *Touby v. United States*, 500 U.S. 160, 165 (1991). However, Congress may seek assistance from other branches when legislating, so long as it provides guidance with the delegated authority. *Id.* Congress must "clearly delineate the general public policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Mistretta v. United States*, 488 U.S. 361, 372–73 (1989). When Congress seeks to delegate its power to enact criminal rules, even greater specificity in the delegation may be required. *See, e.g.*, *Touby*, 500 U.S. at 165–66.

Kittel argues that the delegation of authority in § 1315(c) violates the Constitution because "the delegation lacked specificity and failed to provide meaningful constraint on the Department of Homeland Security's exercise of discretion." Appellant's Br. at 24. Specifically, Kittel argues that authority to regulate for the "protection and administration" of federal property without further limitations is an insufficient restraint on DHS authority and "invites abuse of power." *Id.*

In *United States. v. Cassiagnol*, the Fourth Circuit found that 40 U.S.C. § 318, the predecessor to § 1315(c), did not violate the non-delegation doctrine because the statute (1) limited the General Service Administration's regulation authority to property under its control, (2) restricted the GSA to only "mak[ing] needful rules and

regulations to maintain and protect such property and ensure its use for the authorized purpose," and (3) specified the limits of punishments for GSA regulations. 420 F.2d 868, 876 (4th Cir. 1970). The court also noted that this delegation of power is not unusual, and Congress has delegated similar powers to agencies like the National Park Service, Forest Service, and Bureau of Land Management, to name a few. *Id.*

Other courts in this district have applied *Cassiagnol's* reasoning to § 1315(c) to find that the statute does not violate the non-delegation doctrine. *See e.g.*, *United States v. Mumford,* No. 3:17-CR-0008-JCC, 2017 WL 652449, *4 (D. Or. Feb 16, 2017); *United States v. Cruscial*, 2019 WL 1087150, *3 n.3 (D. Or. Mar. 2019). This Court agrees with this reasoning and concludes that § 1315(c) is not an unconstitutional delegation of legislative power.

### b. *Exceeding Scope of Authority*

Kittel also argues that the regulations under which he was charged are inconsistent with the authority delegated in § 1315(c)(1) which requires that punishments prescribed by GSA be "reasonable."  Specifically, he argues that the maximum punishments prescribed under the GSA regulations, fines authorized under 18 U.S.C. up to $5,000 and 30 days in jail, are not reasonable punishments for a parking violation. Kittel provides no support for this contention besides dicta from *United States v. Baldwin*, 745 F.3d 1027 (10th Cir. 2014), which proposes that a statute authorizing criminal penalties provide criteria the Executive must employ when making its finding. *Baldwin,* 745 F.3d at 1028. Kittel contends that § 1315 fails

to adhere to these principles because Congress offered no limiting principles to guide GSA discretion in defining what a reasonable punishment is.

Kittel does not argue that his actual sentence, $190 in fines, was an unreasonable punishment for his offense, and so his argument is more akin to a facial challenge to 41 CFR § 102-74.450. A facial challenge is "the most difficult challenge to mount successfully" and will only succeed if a litigant can establish that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Given the range of violations covered by the punishments in section 102-74.450, which include the use of bombs and weapons on federal property, there are circumstances in which these statutory maximums are appropriate to punish and deter criminal activity. Therefore, the Court cannot conclude that the maximum penalties of $5,000 in fines or 30 days in jail would be unreasonable in every application of the regulations. Nor can the Court find that the maximum punishments would be unreasonable for every possible parking violation or failure to comply with lawful orders. Thus, the Court concludes that Judge Kasubhai did not err in denying Kittel's motion to dismiss on the grounds that the regulations were invalid.

## III.  *Parking in Violation of a Posted Sign*

Kittel was convicted of having "unlawfully and knowingly parked a vehicle in the Eugene Oregon federal parking lot, contrary to the direction of posted signs" under 41 C.F.R. § 102-74.430(f) ("subsection f"). Doc. 24. Subsection f provides that all vehicle drivers on or entering federal property:

Are prohibited from parking on Federal property without a permit. Parking without authority, parking in unauthorized locations or in locations reserved for other persons, or parking contrary to the direction of posted signs is prohibited. Vehicles parked in violation, where warning signs are posted, are subject to removal at the owner's risk and expense. Federal agencies may take proof that a motor vehicle was parked in violation of these regulations or directives as prima facie evidence that the registered owner was responsible for the violation.

41 C.F.R. § 102-74.430(f).

Kittel raises two arguments against this conviction. First, Kittel argues that the Government provided insufficient evidence to support his conviction. Specifically, Kittel argues that there was insufficient evidence that the signs at the federal parking lot prohibit him, as a federal employee, from parking in visitor parking spot 11. Second, Kittel argues that his convictions violate his Fifth Amendment right to due process because the parking signs and regulations under which he was charged did not provide sufficient notice that he was prohibited from parking in visitor spot 11.

### a. Parking in Violation of Posted Signage

At trial, the Government offered pictures of signage in the parking lot. First a sign was posted at the entrance of the parking lot that stated:

FEDERAL BUILDING – ALL PARKING BEYOND THIS POINT RESERVED – VIOLATORS WILL BE CITED AND TOWED AT OWNER's EXPENSE – TITLE 41 CFR SUBPART 102-74.430 – VISITOR PARKING – 2 HOUR LIMIT – SPACES VIS-1 THRU VIS-39

Ex. 005.



*Ex. 005, picture of sign at entrance of parking lot.*

A sign was also posted on the line between visitor's spot 12 and 13 which read:

FEDERAL BLDG/U.S. COURTHOUSE – VISITOR PARKING – 2 HOUR LIMIT – VIOLATORS WILL BE CITED AND / OR TOWED AT OWNER's EXPENSE

Ex. 002.



*Ex. 002 picture of sign in parking lot.*

Spot 11, where Kittel was parked when he was cited had the word "VISITORS" painted across the ground at the farthest point form the curb. Ex. 001.



*Ex. 001, picture of parking spot 11 with "VISITORS" written on it.*

Kittel argues that the Government's evidence fails to show that the posted signs prohibited his conduct: parking in visitor space 11 as a federal employee. He contends that, "there is no language on either sign that makes at all clear that employees may not park in visitor spaces" and that the none of the signs "contain language indicating that an employee of the federal building who parks in the federal building parking lot can somehow become a 'violator.'" Appellant's Br. at 30.

Kittel's argument strains the plain meaning of the signs. The sign at the entrance of the lot clearly states that all parking spots are reserved. The sign next to spot 11 indicates that the spots are visitor parking. Furthermore, parking spot 11 is

itself marked with the word "visitors" in large visible letters. Taken together those signs clearly communicate that spot 11 was reserved for visitors and that anyone who was not a visitor, like Kittel, could not park there.

### b. *Fifth Amendment Due Process Violation*

Kittel also argues that his conviction violates the Fifth Amendment due process right to fair notice because the regulations and the signage failed to put him on notice that parking in visitors spot 11 was prohibited. "A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice of what is prohibited.'" *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Clear and conspicuous signage satisfies any notice requirements for regulations promulgated under 40 U.S.C. § 1315. *United States v. Bichsel*, 395 F.3d 1053, 1055 (9th Cir. 2005).

The signs at the lot entrance and between visitor spaces meets this standard. The signs are conspicuous because their locations are "reasonably calculated to impart" notice. *Id.* at 1056. As explained above, the signs clearly communicate to a reasonable person that employees are prohibited from parking in visitor's spots like spot 11. So the Court concludes that Judge Kasubhai did not err in denying Kittel's motion to dismiss on the grounds that Kittel's conviction violated his Fifth Amendment due process right to fair notice.

**IV.**    ***Failure to Comply***

Kittel was also convicted of having "willingly and knowingly failed to comply with the lawful direction of a federal police officer and other authorized individuals, to wit; having been advised that he was not free to leave and was being detained for the purpose of issuing a citation, defendant proceeded to drive from the location" in violation of 41 C.F.R. § 102-74.385. Doc. 24. Section 102-74.385 states that:

> Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals.

41 C.F.R. § 102-74.385

To prove a violation of § 102-74.385, the Government must show "(a) that the incident occurred on federal property; (b) that the defendant failed to comply with either (i) an official sign of a prohibitory, regulatory, or directory nature; or (ii) the lawful direction of federal police officers and other authorized individuals; and (c) that the defendant acted unlawfully, willfully, and knowingly." 41 C.F.R. § 102-74.385. Kittel does not contest that he was on federal property at the time but argues that there was insufficient evidence to prove that he (1) failed to comply with the lawful direction of a federal police officer or other authorized individual or (2) acted unlawfully, willfully and knowingly.

Kittel challenges his conviction on four grounds: (1) that Inspector Turner did not issue Kittel a directive, (2) that the Government failed to prove that inspector Turner's detainment order was lawful, (3) that PSO Hawkins was not an authorized individual, and (4) that the Government failed to prove that Kittel knowingly and

willingly disobeyed a federal directive when he drove out of the parking lot while Inspector Turner was issuing him a citation.

At trial, in addition to witness testimony from PSO Hawkins and Inspector Turner, the Government presented a video of the interaction taken by EPD bodycams as well as a video recorded on the phone of a bystander, Thomas Zoll ("Zoll"). Inspector Turner testified that when he began preparing the parking citation, he told Kittel, "you cannot leave." Inspector Turner used a EPD vehicle computer nearby to obtain Kittel's license information to write the citation while EPD officers and PSO Hawkins stood at Kittel's vehicle. EPD bodycam footage shows that Kittel asked the EPD officers and PSO Hawkins if he was detained, to which PSO Hawkins responded that Inspector Turner had directed her that Kittel was being detained. Kittel replied, saying "alright then let's write the citation and leave." Ex. 6, 7:27.

Bodycam footage also shows that Kittel later said that he intended to leave to which PSO Hawkins said, "I just told you that you are not free to leave and are being detained so if you decide to leave you are committing a crime." Ex. 6, 7:30-7:45. Kittel asked PSO Hawkins if she was a federal officer, to which PSO Hawkins replied, pointing to Inspector Turner, that she was working for "that federal officer." Ex. 6, 7:45. Kittel replied that PSO Hawkins was therefore not allowed to give orders, and that as a result, Kittel could leave. PSO Hawkins again said, "you are not allowed to leave, you are being detained," while Inspector Turner wrote a citation. Ex. 6, 8:05-8:13. Kittel said to PSO Hawkins, "if you are allowed to detain me, or anybody is, then state so." Ex. 6, 8:27-8:30. PSO Hawkins again stated that Kittel could not leave.

Kittel finally replied, "you are not stating [that he was being detained], therefore I am not required to stay" and proceeded to drive his car to a parking spot out of the federal parking lot. Ex. 6, 8:33-8:40.

### a. *Lawful Directive by an Authorized Individual*

Kittel argues that the Government failed to provide sufficient evidence that he received a lawful directive from a federal officer or authorized individual. In his appeal, Kittel acknowledges that Inspector Turner is authorized to issue directives but argues that, despite Inspector Turner's testimony that he told Kittel "you cannot leave," no reasonable factfinder could find that Inspector Turner personally gave Kittel a detention order. Kittel contests Inspector Turner's testimony of events relying on (1) Zoll's testimony that he did not hear Inspector Turner tell Kittel that he could not leave, (2) Zoll's video of the incident which does not show Inspector Turner telling Kittel that he could not leave, and (3) EPD bodycam footage showing that Inspector Turner was at an EPD vehicle writing the parking citation when PSO Hawkins gave Kittel repeated orders not to leave. Kittel's argument essentially amounts to a challenge to Inspector Turner's credibility. "Credibility determinations, however, are matters left to the trier of fact" and should not be disturbed on appeal. *United States v. Vasquez*, 858 F.2d 1387, 1391 (9th Cir. 1988). In any event, in context, none of the evidence on which Kittel relies directly contradicts or conflicts with Inspector Turner's testimony. Because the testimony was not incredible or unsubstantial on its fact, it is sufficient to sustain Kittel's conviction.

Kittel also argues that Inspector Turner's order to stay was not lawful because Inspector Turner lacked probable cause to issue the parking citation, and thus unlawfully detained Kittel to write the citation. Relying on *United States v. Sandridge*, Kittel argues that a parking violation is a discrete violation, rather than an ongoing one. 385 F.3d 1032 (6th Cir. 2004). Accordingly, Kittel argues that once he had been given a warning by PSO Honeyman, there was no longer justification for Inspector Turner to issue a second violation for the same criminal act. As the Government points out in its response brief, however, the warning that PSO Honeyman issued was not a criminal citation, and therefore the citation given by Inspector Turner was the first and only for the parking violation. Furthermore, Inspector Turner had independent cause to issue a citation for the parking violation when he went out to the parking lot and saw Kittel's car still parked in the visitor's spot, contrary to the posted signs. Accordingly, the Government sufficiently proved that Inspector Turner issued a lawful detention order.

Finally, Kittel argues that the orders he was issued by PSO Hawkins were not valid because PSO Hawkins was not an "authorized individual." Considering the roles of PSOs on federal property, however, it is clear that they are authorized individuals under the meaning of § 102-74.385. In *United States v. Moriello*, the court found that PSOs were authorized individuals because

> PSOs also have the authority to issue lawful directions. PSOs are legally authorized "to detain" people, "conduct administrative searches," and "put people on notice." J.A. 168. They are required "to be in uniform," and they "look like an actual police officer" with "a badge, gun," and "patches on their shoulders" that show they have a relationship with the Department of Homeland Security. J.A. 169.

> Except for the authority to make an arrest, they have the full authority
> of FPS officers, including the "authority to enforce the Federal
> Management Regulations" at the court facility. J.A. 168–69. To strip
> PSOs of the authority to issue lawful directions would be to render them
> toothless.

980 F.3d 924, 935 (4th Cir. 2020).

While in *Moriello*, PSOs gave defendant an order to stop using her phone in the courtroom, the same basic reasoning applies in the case at hand. Here, PSO Hawkins testified that her job was to "keep employees and visitors safe and to enforce… federal rules and regulations," which reasonably requires the ability to give orders. The Court finds the Fourth Circuit's reasoning compelling as to the authority of a PSO to detain people on the property for the purpose of writing their citations. Therefore, PSO Hawkins is also an authorized individual and so his clear directives to Kittel that he could not go, and that doing so would be a crime are valid orders under 41 CFR § 102-74.385.

**b. *Unlawful, Willing, Knowing Failure to Comply***

Kittel argues that the Government failed to provide sufficient evidence that he acted "unlawfully, willingly, and knowingly" when he disregarded the detention order and drove out of the parking lot to repark his vehicle. To prove that a defendant acted unlawfully, willingly, and knowingly under § 102-74.385, the government must show that the defendant had actual notice of the order. *United States v. Bischel*, 395 F.3d 1053, 1056 (9th Cir. 2005). Actual notice requires the defendant to understand what specific conduct is prohibited. *Id.* at 1057. In *United States v. Huizar* the Ninth Circuit observed that cases sustaining convictions under § 102-74.385 or analogous

Page 21 – OPINION AND ORDER

regulations involved the following elements: (1) "officers gave defendants an unambiguous command (often multiple times); (2) "officers ensured that the command was understood" (3) "officers communicated that defendants would be arrested for failing to comply with an order; and (4) "defendants were given a reasonable opportunity to comply." 762 F. App'x 391, 392 (9th Cir. 2019). The Ninth Circuit noted that "basic principles of due process likely require that any 'lawful direction' contain all, or many, of these qualities." *Id*. Under this standard, the single order, "it's time for you to leave" in *Huizar* was found to be insufficient. *Id*.

Here, the *Huizar* factors show that Kittel had adequate notice. First, reviewing the record, it is clear that Kittel received clear and repetitive orders to not leave. Unlike in *Huizar*, here Kittel was given multiple unambiguous warnings by Inspector Turner and PSO Hawkins stating that Kittel was not allowed to leave, and that he was being detained for the purpose of writing a citation. Second, Kittel understood why he was being detained. Inspector Turner informed Kittel that he could not leave and that he was being issued a parking citation and took his ID. Kittel acknowledged that he was being detained to write a citation, saying "alright then let's write the citation and leave." Ex. 6, 7:27. Finally, PSO Hawkins told Kittel that if he left, he would be committing a crime. Despite these warnings, Kittel drove out of the parking lot. Because the *Huizar* factors were met here, Judge Kasubhai did not err in finding that Kittel knowingly and willingly failed to comply with a lawful directive from an authorized individual.

## CONCLUSION

For the foregoing reasons, defendant's convictions are AFFIRMED.

IT IS SO ORDERED.

Dated this 26th day of August 2021.


_____/s/Ann Aiken_____
Ann Aiken
United States District Judge